This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**RACHEAL ENOAH,**

Petitioner-Appellant,

v.                                                                          **NO. 33,421**

**NEW MEXICO HUMAN SERVICES DEPARTMENT,**

Defendant-Appellee.

**APPEAL FROM THE NEW MEXICO HUMAN SERVICES DEPARTMENT**
**Kathleen M. Fallon, Administrative Law Judge**

New Mexico Legal Aid
Alicia Clark
Albuquerque, NM

for Appellant

New Mexico Human Services Department
John R. Emery, Assistant General Counsel
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**FRY, Judge.**

{1}     Appellant Racheal Enoah appeals the Human Services Department's decision upholding a sanction terminating her welfare benefits under the program called Temporary Assistance for Needy Families (TANF). We affirm.

**BACKGROUND**

{2}     Ms. Enoah applied for TANF benefits and completed an individual responsibility plan in April 2013. On May 9, 2013, the Department notified Ms. Enoah that her request for limited participation due to domestic violence issues had been approved. Ms. Enoah then completed a work participation agreement whereby she agreed to complete eighty-six hours per month of activities, including community service and participation in domestic violence counseling. In the agreement, Ms. Enoah agreed that she was required to report all of her activity hours per month. Ms. Enoah submitted time sheets for the months of May and June 2013, and these were signed by the career development specialist assigned to her case.

{3}     When Ms. Enoah submitted her July time sheet, she was told that she needed to supply verification of the activities represented by the hours listed. Ms. Enoah claimed that she did not know about this requirement, while Department employees claimed they had sent notice of the requirement in May to addresses on file for participants. The address on file for Ms. Enoah in May was apparently not the correct address because Ms. Enoah did not notify the Department of her change of address until July 1, 2013.

**{4}** A Department employee told Ms. Enoah on August 1 that she needed to provide verification of her July hours by August 5. On August 6, an employee told Ms. Enoah that she would be requesting a sanction against Ms. Enoah for her failure to provide a verified time sheet. The employee then told Ms. Enoah that she still had time to get verification, but Ms. Enoah instead asked for the paperwork necessary to request a fair hearing.

**{5}** The Department imposed a third-level sanction (i.e., closure of Ms. Enoah's TANF case and cessation of benefits), and Ms. Enoah requested a hearing. An administrative hearing officer conducted a hearing and recommended finding in favor of the Department's third-level sanction. The Department's acting director adopted the hearing officer's findings, conclusions, and recommendation. This appeal followed. *See* NMSA 1978, § 27-2B-13(F) (1998) (permitting direct appeal to Court of Appeals from adverse decision of director).

**DISCUSSION**

**{6}** Ms. Enoah makes two arguments on appeal. First, she contends that the sanction imposed was invalid because, as a recipient approved for limited participation, she could not be required to commit to eighty-six hours per month, which is the number of hours required of a recipient with standard participation status. Therefore, the invalid hourly requirement rendered the work participation agreement void. Second, she maintains that substantial evidence did not support the Department's crucial

finding that she had been timely notified of the new requirement for verification of her time sheets.

**Standard of Review**

{7}     Our standard of review is dictated by Section 27-2B-13(K), which states:

> The [C]ourt shall set aside a decision and order of the director only if found to be:
> (1)     arbitrary, capricious or an abuse of discretion;
> (2)     not supported by substantial evidence in the record as a whole; or
> (3)     otherwise not in accordance with law.

"An administrative ruling is arbitrary and capricious if it is unreasonable or without a rational basis, when viewed in the light of the whole record[.]" *Selmeczki v. N.M. Dep't of Corr.*, 2006-NMCA-024, ¶ 13, 139 N.M. 122, 129 P.3d 158 (internal quotation marks and citation omitted). "Whether the [agency's] actions were contrary to law is a question we review de novo." *Id.* In reviewing the agency's findings of fact, "we look not only at the evidence that is favorable, but also evidence that is unfavorable to the agency's determination." *Fitzhugh v. N.M. Dep't of Labor*, 1996-NMSC-044, ¶ 23, 122 N.M. 173, 922 P.2d 555. "The burden is on the party challenging the agency decision to demonstrate grounds for reversal." *Selmeczki*, 2006-NMCA-024, ¶ 13.

**The Work Participation Agreement Was Not Void**

{8}     Ms. Enoah argues that the sanction imposed was invalid because the work participation agreement contained an illegal term and, therefore, the agreement itself

was invalid. She claims that her limited participation status required the Department to impose fewer work hours than the number imposed upon a recipient with standard participation status. According to Ms. Enoah, the applicable regulations require a standard participation recipient to complete eighty-six work hours per month and, because Ms. Enoah's work participation agreement required her to complete eighty-six work hours, she was in effect denied limited participation status, and the agreement should be deemed void.

{9}     Our review of the applicable regulations and the record compels us to reject Ms. Enoah's arguments. Ms. Enoah qualified for limited work participation under the family violence option. *See* 8.102.420.11(A)(8) NMAC. This status allowed the Department to "prescribe conditional work program activities and requirements designed to assist the participant to help accommodate and eliminate barriers. The participant may be assigned to core, non-core and other activities." 8.102.420.11(I) NMAC. Ms. Enoah's work participation agreement did not assign any core or non-core activities. Consequently, her limited work participation status exempted her from the work-related activities required of standard participants. *See* 8.102.461.10(A), (B) NMAC (stating that core and non-core activities "are allowable for a participant to meet the standard work participation requirement hours"). Instead, she could fulfill her work participation hours by performing community service at her church and by obtaining domestic violence counseling.

{10} We recognize that the regulations require all single-parent participants with a child under age six, like Ms. Enoah, to complete eighty-six work participation hours per month "unless the participant is granted limited work participation status." 8.102.460.14(C)(2)(a) NMAC. But this does not mean that a participant with limited work participation status *must* be given fewer than eighty-six work participation hours per month. *See* 8.102.460.15 NMAC ("A participant *may* request a limited work participation status reducing their individual standard work participation" to as low as one hour per week or even zero hours under extraordinary circumstances (emphasis added)). The overall scheme of the regulations is to permit limited work participants the flexibility to engage in activities targeting the reasons underlying their status as limited work participants. Ms. Enoah's work participation agreement did just that.

{11} Moreover, even if we viewed the regulations as somehow requiring the Department to assign a limited work participant fewer than eighty-six hours per month, Ms. Enoah has cited no authority for the proposition that failure to comply with that requirement renders the work participation agreement void. We therefore decline to consider the argument further. *See McNeill v. Rice Eng'g & Operating, Inc.*, 2010-NMSC-015, ¶ 11, 148 N.M. 16, 229 P.3d 489 (explaining that where a party fails to cite authority supporting an argument, appellate courts will presume that no such authority exists).

**Substantial Evidence Supports the Department's Finding of Timely Notice**

**{12}** The Department adopted the hearing officer's findings of fact and conclusions of law. Among the adopted findings were the following:

> 7. The Department sent notices to all TANF participants at the end of May 2013 advising them that verification of "other" work activities would be required on all time[]sheets.

> 8. [Ms. Enoah] submitted a change of address form to the Department on July 1, 2013.

Ms. Enoah argues that these findings were not supported by substantial evidence because the findings were based on hearsay controverted by Ms. Enoah's testimony.

**{13}** The record reflects that, as of the date Ms. Enoah submitted her May 2013 time sheet, she listed her address as being on Irving Blvd. in Albuquerque, New Mexico. However, Ms. Enoah testified at the hearing that, as of June 2013, she was getting mail at a P.O. Box and that she then moved to a Harbor Road address. She admitted that she did not tell the Department about the Harbor Road address until July 1, 2013.

**{14}** Despite her failure to keep the Department informed of her address, Ms. Enoah maintains that the evidence that the Department even sent notice of the new verification requirements was hearsay and inadmissible. The relevant program supervisor, Brad Colson testified that his office clerk sent out a mass letter to parents to notify them of the new policies that would be enacted in June 2013. The Department offered the letter sent to participants into evidence at the hearing and Ms. Enoah's attorney had no objection. The letter states in a large font, "Effective for June

2013 time sheets, clients that are under [l]imited participation are required to provide proof/validation of 'other' hours on their time sheet." The letter explains what is required for "proof/validation." The record also contains a Department narrative regarding Ms. Enoah, indicating that the letters were sent out to participants at the end of May 2013.

**{15}** It is far from clear that Colson's testimony regarding the sending of the letters was hearsay because his testimony does not indicate that he lacked personal knowledge about it. However, the narrative indicating the date the letters were sent was clearly hearsay because it was an out-of-court statement offered to prove the truth of the matter asserted. *See* Rule 11-801(C)(2) NMRA. Hearsay evidence is admissible at administrative hearings. 8.100.970.11(F) NMAC ("Formal rules of evidence . . . do not apply to the fair hearing process. All relevant evidence is admissible" subject to the hearing officer's discretion if evidence is repetitive or unduly cumulative.). Ms. Enoah correctly notes that the legal residuum rule requires that the decision in this case must be supported by legally competent evidence. *Anaya v. N.M. State Pers. Bd.*, 1988-NMCA-077, ¶ 13, 107 N.M. 622, 762 P.2d 909. However, we are not persuaded that the legal residuum rule invalidates the decision in this case.

**{16}** "The legal residuum rule does not require that all evidence considered by the administrative agency be legally admissible evidence, but only that an administrative action be supported by *some* evidence that would be admissible in a jury trial." *Id.*

8

¶ 15 (internal quotation marks and citation omitted). In addition, "[evidence] that is admissible under one of the [hearsay] exceptions in the rules of evidence . . . may be used to satisfy the legal residuum rule." *Id.*

{17}    In the present case, the Department narrative establishing that the notification letter was sent to participants at the end of May 2013 would be admissible under the hearsay exception for public records and reports, Rule 11-803(8) NMRA. That exception deems admissible "[a] record or statement of a public office" setting out "the office's activities" unless "the source of information or other circumstances indicate a lack of trustworthiness." Rule 11-803(8)(a)(i); *see Anaya*, 1988-NMCA-077, ¶¶ 17-19 (holding that state police and penitentiary investigative reports were admissible to support termination of correction department employees under the public records hearsay exception). Ms. Enoah does not argue that the narrative was untrustworthy and, moreover, the information in the narrative was corroborated by Colson's testimony.

{18}    We recognize the difficulty that families in need may experience in navigating the requirements imposed by bureaucracies. But it was incumbent upon Ms. Enoah to keep the Department informed of her mailing address. Substantial evidence supports the finding that the Department attempted to notify all relevant participants, including Ms. Enoah, of the impending change in policy.

**CONCLUSION**

9

{19}  For the foregoing reasons, we affirm the Department decision upholding the sanction imposed against Ms. Enoah.

{20}  **IT IS SO ORDERED.**

_____
                                    **CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**LINDA M. VANZI, Judge**